UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Benjamin Teich, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email:  Benjamin.Teich@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 16-20278 (CMG) |
| | Chapter 11 |
| Yvette Davidov and Mikhail Davidov, | The Honorable Christine M. Gravelle |
| Debtors. | |
| | Hearing Date:  December 5, 2017 @ 2:00 p.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO FIRST AND FINAL FEE APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES TO COUNSEL FOR THE DEBTOR**

The Acting United States Trustee ("U.S. Trustee"), by and through his counsel, and in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), respectfully submits this objection (the "Objection") to the First and Final Fee Application for Allowance of Fees and Reimbursement of Expenses to Counsel for the Debtor (the "Fee Application"), and respectfully represents as follows:

**Jurisdiction**

1. This Court has jurisdiction to hear and determine this Objection.

2. Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest);

1

*Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under section 307 of title 11 of the United States Code (the "Bankruptcy Code"), the U.S. Trustee has standing to be heard on the issues raised in this Objection.

**Background**

4. On May 26, 2016 (the "Petition Date"), Yvette Davidov and Mikhail Davidov (the "Debtors") filed a voluntary chapter 11 petition. *See* Docket Entry 1. The U.S. Trustee has not appointed an Official Committee of Unsecured Creditors.

5. On June 9, 2016, the Debtors filed an application seeking to retain Alla Kachen, P.C. ("Kachen") as debtors' counsel. *See* Docket Entry 8. An order approving the application of Kachen was entered on June 21, 2016. *See* Docket Entry 9.

6. On December 14, 2016, the Debtors filed their first disclosure statement and plan. *See* Docket Entries 28 and 29.

7. Creditor McCormick 105, LLC ("McCormick"), the Internal Revenue Service ("IRS"), creditor U.S. Bank Trust, N.A., and the U.S. Trustee, all objected to the first plan and disclosure statement. *See* Docket Entries 36, 38, 40, and 41.

8. The Debtors filed a second disclosure statement and plan on March 6, 2017. *See* Docket Entries 46 and 47. The second disclosure statement and plan drew a formal objection from McCormick and comments from the U.S. Trustee. *See* Docket Entry 48.

9. The Debtors filed a third plan and disclosure statement on April 3, 2017. *See* Docket Entries 52 and 53. Again this drew an official objection from McCormick and comments from the U.S. Trustee. *See* Docket Entry 57. In particular, none of the changes requested by the U.S. Trustee to the previous plan and disclosure statement were made.

10. The Debtors filed a fourth plan and disclosure statement on April 27, 2017. *See* Docket Entries 60 and 61.

11. On June 19, 2017, the Debtors filed a fifth plan and disclosure statement. This time it was filed as a joint individual plan and disclosure statement. *See* Docket Entry 68.

12. On July 25, 2017, the U.S. Trustee filed an objection to the combined plan and disclosure statement. *See* Docket Entry 75. The objection highlighted an inability for a claimant to be able to trace the plan payments into the financial projections and an unexplained drop in income in the second year of the financial projections. *Id*.

13. The confirmation hearing was held on August 1, 2017 and in addition to the issues highlighted in the U.S. Trustee's objection, the Debtors had failed to file a certification of ballots or certification regarding the predicates of confirmation under § 1129 of the Bankruptcy Code. At the hearing, Debtor's counsel agreed to address the concerns of the U.S. Trustee. Corrections and certifications were supposed to be filed by August 22, 2017. The confirmation hearing was carried to September 5, 2017.

14. At the time of the continued confirmation hearing on September 5, 2017, the Debtors had not addressed the objections of the U.S. Trustee and had not filed a certification of ballots or a certification regarding the elements of plan confirmation. Plan confirmation was adjourned to September 19, 2017.

15. Finally, on September 19, 2017, the Debtors had filed a confirmable plan and disclosure statement and an order confirming the Debtors' plan was entered on October 19, 2017. *See* Docket Entry 86.

16. On November 3, 2017, Kachen filed its application for compensation. The application seeks approximately $15,000 in fees of which Kachen holds a $5,000 retainer that can be applied against any awarded amount. *See* Docket Entry 89.

17. The application includes an exhibit detailing the time spent by Kachen on various tasks. *See id.* No task is billed at less than 0.5 hours and all tasks are billed in 0.5 hour increments. *Id.* This includes, in some instances, "filing" of documents being billed for a half an hour of work or more. *Id.* Some entries include multiple tasks lumped together (*e.g.* filing and serving chapter 11 plan and disclosure statement for 1.5 hours). *Id.* There is no indication that travel time was charged at 50%. *Id.* In fact, no travel time has been segregated in the exhibit.

## Law

22. 11 U.S.C. § 330(a)(1) provides that after notice and a hearing, the court may award to a professional person employed under 11 U.S.C. § 327 "reasonable compensation for actual, necessary services rendered" by such a professional person. *See* 11 U.S.C. § 330(a)(1). In assessing the reasonableness of compensation, Section 330 of the Bankruptcy Code sets forth six (6) factors that are to be considered. *See* 11 U.S.C. § 330. These factors, focusing on the nature, extent, and value of the services provided by the professionals at the time incurred, include:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

4

>   (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title; and
>
>   (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. §§ 330(a)(3). *See also In re Northwest Airlines Corp.*, 400 B.R. 393, 398 (Bankr. S.D.N.Y. 2009)

23. The standards set forth in section 330 of the Bankruptcy Code have been interpreted to provide that, "[t]he court may award 'reasonable compensation for actual, necessary services rendered' by . . . professionals 'based on (i) nature of the services, (ii) extent of the services, (iii) value of the services, (iv) time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases.'" *In re Channel Master Holdings, Inc.*, 309 B.R. at 861 *quoting In re Busy Beaver Building Centers, Inc.*, 19 F.3d at 840. *See also In re Fleming Companies, Inc.*, 304 B.R. at 89 (same). A bankruptcy court, however, "'should not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case.'" *In re Fleming Companies, Inc.*, 304 B.R. at 89 *quoting* 11 U.S.C. § 330(a)(4)(A).

24. It should be noted that professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate. *See* 11 U.S.C. § 330(a)(4)(A)(ii). In addition, the fees must be reasonable and necessary. Thus, benefit to the estate and necessity is the critical threshold issues before the court may award any compensation. *See* 11 U.S.C. § 330(a)(4)(A)(ii). *See also In re Lederman Enterprises*, 997 F.2d 1321, 1322-23 (10th Cir. 1993) (where the Court held that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative).

The burden rests squarely with the party seeking compensation to prove that the compensation and expenses sought were reasonable and necessary. *See also Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir. 1995); *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997) (citing *In re Ark. Co.*, 798 F.2d 645, 650 (3d Cir. 1986) (other citation omitted)); *Johnson v. Holiday Express Inc.*, 488 F.2d 714 (6th Cir. 1974).

25. In analyzing whether a movant has satisfied its burden for approval of compensation, a bankruptcy court should evaluate the "two-tier[ed] test for determining whether and in what amount to compensate professionals. . . [f]irst, the court must be satisfied that the professionals performed actual and necessary services. . . [s]econd, the court must assess a reasonable value for those services." *In re Channel Master Holdings, Inc.*, 309 B.R. at 861 (internal quotation omitted). *See also*, *In re Fleming Companies, Inc.*, 304 B.R. at 90.

26. The Busy Beaver opinion directs that professionals retained by a debtor "exercise[] the same 'billing judgment'" as they do when billing services for clients who are not involved in a bankruptcy case, such as "by, for example, writing off" charges "for which analogous non-bankruptcy clients typically decline to pay." *See In re Busy Beaver Bldg. Centers., Inc.*, 19 F. 3d 833, 856 (3d Cir. 1994). This directive applies to the amount of time billed for professional services as well as to the amount of charges for those services.

27. Applicants may not fail to supply sufficient information to enable proper analysis of the services rendered as required by Fed. R. Bankr. P. 2016(a), which requires that an entity seeking compensation for services set forth a detailed statement of the services rendered, time expended and expenses incurred to allow the determination of whether the services were actual and necessary. *See id.* at 845. Professionals should not be compensated for excessive, duplicative or redundant services caused, for example, by overstaffing. *Id.*

28. It is common and expected practice to bill travel time at 50% of normal rates. *See In re Babcock & Wilcox Co.*, No. CIVA 06-9964, 2007 WL 854304, at *5 (E.D. La. Mar. 15, 2007), aff'd, 526 F.3d 824 (5th Cir. 2008) (summarizing abundant case law on the subject).

29. Here, Kachen has not carried its burden to demonstrate that the five plans and disclosure statements drafted all benefitted the estate and were not duplicative. In addition, the time entries supporting the fee application contain lumped entries (*e.g.* filing and serving the plan), entries indicating more time than necessary to complete a task (*e.g.* filing taking a half an hour), and occasionally vague descriptions (*e.g.* meeting with clients). Further, there is no indication that travel time was charged at the customary 50%.

**Conclusion**

30. Kachen has the burden of proof to establish that it is entitled to the compensation requested pursuant to 11 U.S.C. § 330. However, Kachen has failed to establish that certain services were reasonable and benefited the estate and failed to provide adequate detail to support those services that were reasonable and benefited the estate. As a result, the fee requested in the Application should be reduced accordingly.

                Respectfully submitted,

                ANDREW R. VARA
                ACTING UNITED STATES TRUSTEE
                REGION 3

                By: */s/ Benjamin Teich*
                      Benjamin Teich
                      Trial Attorney

Dated: November 28, 2017